**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRENDA LEE GEIGER, TIFFANY TOTH, CARMEN ELECTRA, and CLAUDIA SAMPEDRO, | Case No. _____ |
| Plaintiffs, | |
| - against - | |
| LA OFICINA OF QUEENS, INC. d/b/a LA OFICINA, and GEORGE NIKOLAOS STOUPAS, | **COMPLAINT** (Jury Trial Demanded) |
| Defendants. | |

Plaintiffs BRENDA LEE GEIGER, TIFFANY TOTH, CARMEN ELECTRA, and CLAUDIA SAMPEDRO (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against defendants LA OFICINA OF QUEENS, INC., d/b/a LA OFICINA, and GEORGE NIKOLAOS STOUPAS, (collectively, "Defendants"), respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants theft, alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of whom are world renowned professional models, in order to promote their strip, La Oficina, a strip club located in Queens, New York.

2.      As detailed below, Defendants theft and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which

protects a person's right to privacy and publicity; c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices; d) defamation, and; e) various common law torts.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any of the Clubs, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant La Oficina of Queens, Inc. ("La Oficina, Inc."), is a corporation formed under the laws of the state of New York, with a principal place of business located at 3920 104th Street, Corona, New York 11368.  According to publicly available records, defendant George Nikolaos Stoupas ("Stoupas") is the Principal of La Oficina, Inc.

7.      Venue is proper in the United States District Court for the Eastern District of New York because Queens County is Defendants' principal place of business.

8.      All parties have minimum contacts with Queens County, a significant portion of the alleged causes of action arose and accrued in Queens County, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Queens County.

## PARTIES

*Plaintiffs*

9.      Plaintiff Brenda Lynn Geiger ("Geiger") is a well known professional model, and a resident of Onondaga County, New York

10.     Plaintiff Tiffany Toth ("Toth") is a well known professional model, and a resident of Orange County, California.

11.     Plaintiff Carmen Electra ("Electra") is a well known professional singer, model and actress, and a resident of Los Angeles County, California.

12.     Plaintiff Claudia Sampedro ("Sampedro") is a well known professional model, and a resident of Miami-Dade County, Florida.

*Defendants*

13.     According to publicly available records, defendant La Oficina, Inc. is a corporation formed under the laws of the state of New York, with a principal place of business located at 3920 104th Street, Corona, New York 113685.  La Oficina, Inc. owns and operates La Oficina, a strip club located at 3920 104th Street, Corona, New York 113685.

14.     Upon information and belief, Stoupas is a resident of the State of New York. Stoupas is identified by the New York State Liquor Authority as the Principal of La Oficina, Inc. Upon information and belief, Stoupas, in his capacity as Principal of La Oficina, Inc., maintains operational control over La Oficina, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

15.     As set forth immediately below, each Plaintiff is an extremely well known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

16.     Plaintiffs' careers in the modeling industry place a high degree of value on their

good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

17.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed Show Palace and/or Sin City.

18.     In the case of each and every Plaintiff, such appearance was false.

19.     Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

*Plaintiffs' Backgrounds and Careers*

20.     Geiger is a model and actress who got her start appearing in various hip-hop videos, including with the artists Lil' Wayne and Keri Hilton.  Geiger is perhaps best known for her work for Glamour, and her appearances on the Howard Stern Show in a Miss HTV March contest.   Geiger has been featured in numerous men's magazines, including *Show*, *Maxim* and *Raw*, and in advertisements for, among other products, Primitive Clothing, for which she has her own custom skateboard decks.

21.     That we know of, Geiger is depicted in the photo in Exhibit "A" to promote La Oficina on its Instagram page.  This Image depicts Geiger in a sexually suggestive outfit and was intentionally altered to make it appear that Geiger was either a stripper working at La Oficina, or endorsed the Club.

- 4 -

22.     Geiger has never been employed at La Oficina, has never been hired to endorse La Oficina, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

23.     Toth is an extremely successful model who was the September 2011 *Playboy* Playmate of the Month. Toth has also appeared in a variety of magazines including *Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, as well as appearing in countless other catalogs and publications.   Toth's popularity and renown is evidence by the fact that she has over 2 million Facebook followers, over 300,000 Instagram followers, and over 100,000 Twitter followers.[1]   In addition to her Toth's modeling work, she owns and maintains her own e-commerce site.

24.     That we know of, Toth is depicted in the photo in Exhibit "B" which was published on the La Oficina Instagram page. This Image shows Toth in a sexually suggestive outfit and was intentionally altered in order to make it appear that Toth was either a stripper working at La Oficina, or that she endorsed the Club.

25.     Toth has never been employed at La Oficina, has never been hired to endorse La Oficina, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

26.     Electra is an actress, recording artist, and entrepreneur who over the past two decades has consistently been one of Hollywood's most versatile personalities.   Electra was first signed by music superstar Prince, who produced her first, self-titled album on his Paisley Park record label.  Electra then ventured into acting, first  with regular roles on *Baywatch* and MTV's *Singled Out*, and then into film, with starring roles in blockbuster hits including *Scary Movie*,

---

[1] In the modeling industry, the number of online followers a model has is a strong indication of her popularity and, thus, earning potential.

*Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*. Electra won the role as the face of MAX Factor, following in the famous footsteps of Marilyn Monroe and Jaclyn Smith, and in 2006, became a published author with the release of her book, "How to be Sexy."  Electra also formed a dance troupe, The Bombshells, who perform nationwide, and recently released the fitness DVD series, *Carmen Electra's Aerobic Striptease*.  In 2009, Electra appeared live on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences; in 2010, Electra starred in the film, *Oy Vey, My Son is Gay*, and in 2011 Electra starred in the film *2-Headed Shark Attack*, alongside Charlie O'Connell, served as a guest judge on *Britain's Got Talent*, and made reoccurring guest appearances on CW's hit show, *90210*.  In 2012, Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel, which hit the number 25 spot on Billboard's Dance Club Play Chart.  Since 2014 Electra has released numerous additional singles to worldwide acclaim.  Electra can currently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered on January 8th, 2016.  She has 2.5 million Facebook followers, 486,000 Instagram followers, and nearly 400,000 Twitter followers.

27.     That we know of, Electra is depicted in the photo in Exhibit "C" to promote La Oficina on its Instagram page.  This Image shows Electra in a sexually suggestive outfit and was intentionally altered to make it appear that Electra was either a stripper working at La Oficina, or endorsed the Club.

28.     Electra has never been employed at La Oficina, has never been hired to endorse La Oficina, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.     Sampedro is a Cuban born model, mother and spokeswoman, who has appeared in

- 6 -

many catalogues and magazine editorials, and has a number of cover credits for magazines such as *Nine 5 Four*, *Shock*, *Face to Face* and *Mixed*.  Sampedro is a sponsored model for Nutri Sups Nutrition, and is also a spokesmodel and contracted model for Bare Ava.  Sampedro is also a Social Media Influencer, with close to a million Instagram followers and a further combined half million fans on Facebook and Twitter.

30.     That we know of, Sampedro is depicted in the photo in Exhibit "D" to promote La Oficina on its Instagram page.  This Image shows Sampedro in a sexually suggestive outfit and was intentionally altered to make it appear that Sampedro was either a stripper working at La Oficina, or endorsed the Club.

31.     Sampedro has never been employed at La Oficina, has never been hired to endorse La Oficina, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

32.     Upon information and belief, La Oficina, Inc. operates La Oficina, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

33.     Upon information and belief, and in furtherance of its promotion of La Oficina, La Oficina, Inc. owns, operates and controls La Oficina's social media accounts, including the La Oficina's Facebook, Twitter, and Instagram accounts.

34.     La Oficina, Inc. uses the La Oficina's Facebook, Twitter, and Instagram accounts to promote La Oficina, and to attract patrons thereto.

35.     La Oficina, Inc. does this for its own commercial and financial benefit.

36.     La Oficina, Inc. has used, advertised, created, printed and distributed the Images

of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at La Oficina, or endorsed La Oficina.

37.     La Oficina, Inc. used Plaintiffs' Images, and created the false impression that they worked at or endorsed La Oficina in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

38.     As La Oficina, Inc. was at all times aware, at no point has any of the above named Plaintiffs ever been affiliated with or employed by La Oficina and at no point have any of the Plaintiffs ever endorsed La Oficina.

39.     All of La Oficina, Inc.'s activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and La Oficina, Inc. did not compensate Plaintiffs for its use of their Images.

40.     As such, Plaintiffs have never received any benefit for La Oficina, Inc.'s use of their Images.

***Standard Business Practices in the Modeling Industry***

53.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

54.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the

images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendant's Theft of Plaintiff's Images***

55.    As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs privacy by using Plaintiffs Images for commercial purposes in order to promote La Oficina by and through various marketing and promotional mediums including, without limitation, La Oficina's Twitter, Facebook, and Instagram pages.

56.    Defendants showcased Plaintiffs' Images on La Oficina's social media in order to create the false impression that Plaintiffs worked at La Oficina, or endorsed La Oficina.

57.    Defendants did so in order to attract clientele to La Oficina, promote La Oficina, and thereby generate revenue for Defendants.

58.    Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed La Oficina's.

59.    Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.  This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are each strippers.

60.    At no point were any of the Plaintiffs ever affiliated with La Oficina, or Defendants.

61.    Each of Plaintiffs' Images was used without her consent.

62.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

63.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

64.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including La Oficina's social media accounts.

65.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

66.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

### FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:
False Endorsement)**

67.      Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

68.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described herein.

69.     Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at La Oficina, or endorsed the Club.

70.     This was done to promote and attract clientele to La Oficina, and thereby generate revenue for the Defendants.

71.     Thus, this was done in furtherance of Defendants' commercial benefit.

72.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither

worked at, nor endorsed, La Oficina, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with La Oficina.

73.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at La Oficina.

74.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of La Oficina, and the goods and services provided by La Oficina.

75.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of N.Y. Civ. Rights Law §§ 50-51)**

76.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

77.     As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on La Oficina's website or related social media accounts altered Images of Plaintiffs, which made it appear as though Plaintiffs were employed at La Oficina, or endorsed La Oficina.

78.     At all relevant times, La Oficina's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

79.     La Oficina's website and social media accounts were designed to attract business to La Oficina and generate revenue for Defendants.

80.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact

attract clientele and generate business for La Oficina.

81.    At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their website or social media account.

82.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote La Oficina.

83.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

84.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

85.    Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

86.    In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

87.    In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

### THIRD CAUSE OF ACTION
### (Violation of N.Y. General Business Law § 349:
### N.Y. Deceptive Trade Practices Act)

88.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth herein.

89.     Defendants operated the La Oficina's website and social media accounts in order to promote La Oficina, to attract clientele thereto, and to thereby generate revenue for Defendants.  As such, Defendants' operation of the websites and social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

90.     Defendants published Plaintiffs' Images on La Oficina's website and social media accounts in order to create the false impression that Plaintiffs were either strippers working at La Oficina, or endorsed La Oficina.

91.     As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with La Oficina.

92.     As Defendants were at all times aware, Plaintiffs never worked at La Oficina, never endorsed La Oficina, and never had any affiliation with La Oficina.

93.     Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at La Oficina, or endorsed same.

94.     As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on La Oficina's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

95.     As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have  been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Defamation)

- 13 -

96.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

97.     As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote La Oficina to the general public and potential clientele.

98.     Defendants' publication of said Images constitutes a representation that Plaintiffs were either employed by La Oficina, that they endorsed La Oficina or that they had some affiliation with La Oficina.

99.     None of these representations were true.

100.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at La Oficina or endorsed same.

101.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by La Oficina, had no affiliation with La Oficina, had not consented to the use of their Images, and had not been compensated for the use of their Images.

102.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by La Oficina, had no affiliation with La Oficina, had not consented to the use of their Images, and had not been compensated for the use of their Images.

103.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

104.    Defendants' publication of Plaintiffs' Images constitutes defamation under New

York law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

105.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

106.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

107.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

108.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

### FIFTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

109.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

110.    Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of models

that were used on La Oficina's website and social media accounts.

111.    Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

112.    In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of Images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and New York law, were not violated.

113.    In addition, Defendants had a duty to refrain from appropriating the Images of those with whom it had not contracted, and had not paid.

114.    Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

115.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Conversion)

116.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

117.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests therein.

118.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

119.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and

- 16 -

publication of same, Plaintiffs have suffered damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

120.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

121.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote La Oficina's to the general public and potential clientele.

122.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at La Oficina, or endorsed same.

123.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

124.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

125.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to La Oficina.

126.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

127.    As such, Plaintiffs have been damaged in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive

and exemplary damages.

## EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

128.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

129.   Plaintiffs are each world famous models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

130.   Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

131.   Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at La Oficina, or endorse La Oficina, Defendants have not compensated Plaintiffs.

132.   Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

133.   Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through eighth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote La Oficina;

- 18 -

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       January 30, 2016

**THE CASAS LAW FIRM, P.C.**

By: /s/ John V. Golaszewski
    John V. Golaszewski, Esq.
    1745 Broadway, 17th Floor
    New York, New York
    T: 855.267.4457
    F: 855.220.9626

    *Attorneys for Plaintiffs*